UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RADIUS BANK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-0591-B |
| | § | |
| STAFFORD TRANSPORT OF | § | |
| LOUISIANA, INC. d/b/a CUSTOM | § | |
| ECOLOGY, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a breach-of-contract case. Plaintiff Radius Bank filed a Motion for Temporary Restraining Order (TRO) (Doc. 5), seeking to enjoin Defendant Custom Ecology, Inc. (CEI) from, amongst other things, using certain leased trailer–vehicles. On March 16, 2020, the Court held a hearing on Radius's Motion for TRO. At the hearing, the Court **DENIED** Radius's Motion. This Order further explains the Court's reasoning.

### I.

### BACKGROUND[1]

*A.    The Lease Documents and the Leased Trailers*

In June of 2014, General Electric Capital Corporation (GECC), as lessor, and CEI, as lessee, entered into a Master Vehicle Lease Agreement (Master Agreement or Master Lease). Doc. 5, Pl.'s Mot. for TRO, 3. Under the Master Agreement, GECC agreed to lease certain trailers to CEI. *Id.*

Section 1 of the Master Agreement states that the vehicles are the property of GECC, while

---

[1]All facts are taken from Radius's Motion for TRO. *See* Doc. 5, Pl.'s Mot. for TRO.

CEI, as the lessee, has "full and complete[] control of" the vehicles. *Id.* (citation omitted). Section 1 further specifies that the only interest CEI has in the vehicles is that of a *lessee—i.e.*, CEI does not have any "right, title, or interest" in the vehicles. *Id.* (citation omitted).

In total, GECC and its successor, BMO Harris Bank, N.A. (BMO), leased 110 trailers to CEI. *Id.* at 4. Radius then became the successor in interest to both GECC and BMO. *Id.* at 4.

B.  *CEI's Default and Cancellation of CEI's Rights Under the Master Lease*

Section 7 of the Master Lease states, in part:

Lessee shall return each Vehicle to Lessor, at Lessee's expense, at the expiration, cancellation, or termination of this Lease in relation to such Vehicle at the location designated by Lessor in the same working order, condition and repair as when received by Lessee, excepting only reasonable wear and tear caused by normal usage of such Vehicle, together with all license plates, registration certificates, or other documents relating to such Vehicle.

*Id.* The license plates, registration certifications, and other documents are collectively referred to as the "Leased Trailers Documentation." *Id.* (citation omitted).

Section 17 of the Master Lease notes that CEI defaults on the Master Lease when it fails to pay any amount due to the lessor under the lease. *Id.* at 5 (citation omitted).

Section 18(a)(1) of the Master Lease states the following measures can be taken if CEI defaults:

- CEI's rights to the vehicles under the Master Lease may be cancelled at the option of the lessor;

- If such cancellation occurs, CEI must pay all unpaid monthly rentals;

- All other amounts under the Master Lease also become due;

- The lessor may take possession of all such vehicles or require CEI to return the vehicles to a location of the lessor's choice;

- The lessor can enter any premises where the vehicles may be found to

repossess them.

*Id.* (citation omitted). Accompanied with its motion for a TRO, Radius provides documentation that CEI owes it $2,778,980.85 under the Master Lease. *See id.* at 7 (citing Doc. 7, Pl.'s App., 117).

Radius alleges that CEI has been in default under the Master Lease for months because of a failure to pay the monthly lease payments. *Id.* at 5. Radius states that CEI's last payments were on: (1) November 15, 2019, for $ 72,753.78 for certain scheduled payments; and (2) November 25, 2019, for $17,850.43 for other scheduled payments. *Id.* at 5–6. Radius alleges that CEI did not make "any other past due or monthly lease payments." *Id.* at 6.

Due to CEI's failure to pay, on January 28, 2020, Radius gave CEI notice of its cancellation of CEI's rights under the Master Lease. *Id.* Radius also demanded that CEI assemble the trailers so that Radius could exercise its contractual right to repossess and liquidate the trailers. *Id.* Radius then notified CEI on February 2, 2020, of the location to which CEI had to deliver the trailers. *Id.*

C.  *CEI's Failure to Surrender the Leased Trailers and Leased Trailers Documentation*

According to Radius, CEI did not deliver the trailers or their documentation to Radius as required under the Master Lease. *Id.* Radius also believes that CEI is continuing to use the trailers in its business operations, and that CEI is under financial distress. *Id.* Radius calculates that CEI owes Radius $2,778,980.85 under the Master Lease. *Id.* at 7.

**II.**

**LEGAL STANDARD**

"Injunctive relief is an extraordinary and drastic remedy, and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (internal quotations and citation omitted). To obtain a TRO, a plaintiff must show: (1)

"a substantial likelihood of success on the merits"; (2) "a substantial threat of immediate and irreparable harm, for which he has no adequate remedy at law"; (3) "that greater injury will result from denying the [TRO] than from its being granted"; and (4) "that a temporary restraining order will not disserve the public interest." *Dearmore v. City of Garland*, 2005 WL 1630156, at *1 (N.D. Tex. June 28, 2005) (citing, *inter alia*, *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987)). "A [TRO]. . . is simply a highly accelerated and temporary form of preliminary injunctive relief, which requires the party seeking such relief to establish the same four elements for obtaining a preliminary injunction." *BNSF Ry. Co. v. Panhandle N. R.R. LLC*, 2016 WL 10827703, at *1 (N.D. Tex. Dec. 30, 2016) (internal quotations omitted).

In contrast with prohibitive preliminary relief, "mandatory preliminary relief, . . . which goes well beyond simply maintaining the status quo [during litigation], is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Three Expo Events, L.L.C. v. City of Dallas*, 182 F. Supp. 3d 614, 622 (N.D. Tex. 2016) (quotation marks omitted) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)).

## III.

## ANALYSIS

Radius brings a breach-of-contract claim against CEI. Doc. 1, Compl., 7–8. In its Motion for TRO, Radius asks the Court to order the following:

(a)  CEI shall immediately desist and refrain from using or operating any of the Leased Trailers . . . in its business or otherwise;

(b)  CEI shall immediately transport, move, return, store, and/or maintain the Leased Trailers to/at a location designated by Radius and/or ordered by the Court;

(c)  CEI shall immediately assemble and maintain the Leased Trailers

> Documentation . . . and immediately provide copies of same to Radius;
>
> (d) CEI shall immediately allow Radius and/or its agents to inventory and inspect the Leased Trailers at the aforementioned location and to liquidate the Leased Trailers and apply the proceeds in accordance with the Lease Documents [];
>
> (e) Such other and further relief to which Radius is entitled and as ordered by the Court.

Doc. 5, Pl.'s Mot. for TRO, 2–3.

In sum, the Court finds that although Radius has demonstrated a high likelihood of success on the merits of its breach-of-contract claim, it has failed to show that it will suffer irreparable harm if the TRO were denied. For that reason, the Court **DENIES** Radius's Motion for TRO.

A. *Likelihood of Success on the Merits*

Radius characterizes this dispute as a simple breach-of-contract case. Radius first argues that the Master Lease is a valid contract. *Id.* at 8. Next, it contends that it has performed or tendered performance of its obligations under the Master Lease. *Id.* Then, Radius explains that CEI materially breached the Master Lease by failing to: (1) pay the full amounts owed under the Master Lease; and (2) surrender the trailers and their documentation to Radius. *Id.* Specifically, Radius points to documentation showing that CEI owes Radius over $2.7 million under the Master Lease. *See id.* (citing Doc. 7, Pl.'s App., 105–12; 117). Finally, Radius argues that CEI's breach of the Master Lease has caused Radius damages in that same amount. *Id.* (citing Doc. 7, Pl.'s App., 117).

A breach-of-contract claim has four elements: "(1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach." *In re Staley*, 320 S.W.3d 490, 499 (Tex. App.—Dallas 2010, no pet.) (citation omitted).

In its response, CEI does not dispute Radius's likelihood of success on the merits of its claim. *See generally* Doc. 13, Def.'s Resp. Nor did CEI do so at the hearing. CEI does, however, dispute the amount that it owes under the Master Lease. *See id.* at 13. Additionally, at the hearing, CEI argued that Radius did not provide it with an adequate opportunity to cure its missed payments as allowed under the Master Lease.

Regardless of the actual amount that CEI owes Radius, the Court concludes that Radius has demonstrated a high likelihood of success on the merits of its breach-of-contract claim. Radius provided the Court with various letters and emails it sent to CEI explaining that CEI was late in making required payments. *See* Doc. 7, Pl.'s App., 98–114. Many of these emails provide detailed charts about the money owed on the lease, and request that the trailers be returned to Radius pursuant to Radius's rights under the Master Lease. *See, e.g.*, *id.* at 112, 114. Further, Radius also attaches a chart to its Motion that details CEI's "[p]ayoff as of 3/04/20," which states that the total amount due on the Master Lease is $2,778,980.85. *Id.* at 117.

Additionally, in emails, CEI seems to acknowledge that it owes Radius payments, but that CEI was working "non stop" to secure a new credit facility, and that "[n]o payment" would be going out to lenders until the credit facility was secured. *See id.* at 107–09. Thus, for the purposes of this Motion, Radius has shown that: (1) there was a valid contract (the Master Lease); (2) CEI failed to perform a material obligation by not paying the amount due on the contract; and (3) Radius has suffered damages in the same amount. Additionally, CEI did not allege in its response or at the hearing that Radius itself breached the contract. Therefore, Radius has established a high likelihood of success on the merits of its breach-of-contract claim. *See In re Staley*, 320 S.W.3d at 499 (citation omitted) (listing the four elements of a breach-of-contract claim).

B.  *Irreparable Harm*

Although the Court concludes that Radius has a high likelihood of success on the merits of its claim, the Court finds that Radius has not established that it will suffer irreparable harm if the Court were to deny its requested injunctive relief.

In its attempt to establish irreparable harm, Radius points out that CEI continues to use the vehicles in its daily business. Doc. 5, Pl.'s Mot. for TRO, 8. Radius believes that because the vehicles are a depreciable asset, "[w]ith each passing day" the vehicles' repossession and resale value to Radius diminishes. *Id.* at 9.

Moreover, Radius argues that, under Texas law, injunctive relief is appropriate to enforce the Master Lease. *See id.* (citing TEX. BUS. & COMM. CODE §2A.525(b); *Clark Equip. Co. v. Armstrong Equip. Co.*, 431 F.2d 54, 57 (5th Cir. 1970)). At the hearing, Radius relied heavily on *Clark* for the proposition that a court can grant mandatory injunctive relief and order the collection of various assets in several states. Radius also believes that because CEI is having financial difficulties, it would not be able to pay the amount due under the Master Lease. Doc. 5, Pl.'s Mot. for TRO, 9–10. Thus, to Radius, the only adequate or meaningful remedy would be injunctive relief. *Id.*

The Court concludes that Radius has not established that it will suffer irreparable harm if its TRO were denied, for four reasons.

First, as CEI points out in its response, Radius's calculation of the money that it is owed under the Master Lease (which CEI disputes) demonstrates that Radius can precisely determine the value of its harm. Doc. 13, Def.'s Resp., 10–11. This fact cuts against the existence of irreparable harm. *See Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." (citations omitted)).

Second, Radius's belief that CEI would be unable to pay damages after a trial on the merits—even if relevant—is mere conjecture. Although Radius attaches emails from CEI that show that CEI was looking for a new credit facility, see, *e.g.*, Doc. 7, Pl.'s App., 108–09, these emails also express CEI's optimism that it would find one soon. *See id.* at 10. In fact, CEI confirms as much: CEI explains in its response that it has secured a new lender through Orox Capital, Doc. 13, Def.'s Resp., 1–2, and is confident that it will be able to repay Radius as soon as it secures "an additional loan facility, which CEI fully anticipates will be in the near future." *Id.* at 10. CEI reiterated its plans at the hearing. Moreover, in arguing that CEI is unable to pay its debt, Radius cites to only its own Complaint and a chart detailing how much it is owed under the Master Lease. *See* Doc. 5, Pl.'s Mot. for TRO, 9–10 (citing Doc. 1, Compl., ¶ 26; Doc. 7, Pl.'s App., 117). Thus, Radius has fallen short on its burden to show irreparable harm. *See White v. Carlucci*, 862 F.2d 1209, 1212 (5th Cir. 1989) ("Without question, the irreparable harm element must be satisfied by independent proof, or no injunction may issue."). This is especially true here, where Radius is seeking a mandatory injunction and must show that "the facts and law clearly favor" Radius. *Three Expo Events*, 182 F. Supp. 3d at 622 (citation and quotation marks omitted).

Third, Radius has not pointed to any specific case law that shows that inability to pay, in and of itself, constitutes irreparable harm. "[T]he general rule [is] that contract claims do not create a right to injunctive relief." *King v. Hawgwild Air, LLC*, 2008 WL 11347424, at *2 (N.D. Tex. Feb. 22, 2008). Irreparable harm means such an injury for which there is "no adequate remedy at law." *Id.* (citation and quotation marks omitted). In *King*, the plaintiff made the same argument that Radius makes here—*i.e.*, if the court does not grant the plaintiff's request for an injunction, the plaintiff will never be able to recover from the defendant because it does not have the assets to satisfy a judgment.

*Id.* The *King* court found that this was insufficient to show irreparable harm. *Id.* Although in *King* the Plaintiff was seeking to enjoin the Defendant from selling an asset, while here Radius is seeking to enjoin CEI's use of an asset, the point remains the same: injunctive relief in breach-of-contract cases is the exception, rather than the rule. *Id.*

Here, Radius relies on Texas Business and Commerce Code § 2A.525(b), Texas Civil Practice and Remedies Code § 65.011(5), and a 1970 Fifth Circuit opinion, *Clark Equipment Company*, 431 F.2d 54, to support its arguments for irreparable harm. Doc. 5, Mot. for TRO, 9.

Radius is correct that Texas law is relevant when considering what could constitute irreparable harm. *See Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 (5th Cir. 2013) (per curiam) (holding that the district court erred in failing to consider Texas law when considering injunctive relief).

However, Radius's statutory and case law citations do not support its requested injunctive relief. Although Texas Business and Commerce Code § 2A.525(b) allows a lessor to repossess goods, it does not mention injunctive relief as a means to do so. Additionally, Texas Civil Practice and Remedies Code § 65.011(5) does allow for injunctive relief when "irreparable injury to real or personal property is threatened . . . ." But under Texas law, "[i]rreparable injury is . . . an injury of such nature that the injured party cannot be adequately compensated therefore in damages, or that the damages which result therefrom cannot be measured by any certain pecuniary standard." *Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ) (citation and quotation marks omitted). As discussed above, Radius fails to show that it cannot be adequately compensated through monetary damages.

Finally, *Clark* is distinguishable because there, the district court issued its mandatory

injunction only after a "further hearing" following an initial preliminary injunction. 431 F.2d at 56. In its first hearing, the district court made a specific finding that the defendant was in default, and the court required the defendant to post a bond. *Id.* Then, "following a further hearing," the district court ordered the defendant to assemble and make available to the plaintiff the equipment in question—the type of relief Radius requests here. *Id.* But Radius never asked the Court for a finding of default, and because this is a motion for a TRO, the Court has not had the opportunity to have multiple hearings like in *Clark* on Radius's requested mandatory injunctive relief. For these reasons, Radius's reliance on *Clark* is misplaced.[2]

At the hearing, Radius's counsel insisted—at the end of the hearing, and only after wholly relying on *Clark*—that it cited in its brief to Texas case law suggesting that a defendant's inability to pay constitutes irreparable harm. However, Radius's counsel did not point the Court to where those citations were or the names of those cases. After again reviewing Radius's motion, the Court believes that Radius was referencing two cites on page 10 of its motion. *See* Doc. 5, Pl.'s Mot. for TRO, 10. The first case is *Texas Industrial Gas v. Phoenix Metallurgical Corporation*, 828 S.W.2d 529, 533 (Tex. App.—Houston [1st Dist.] 1992, no writ). However, in *Texas Industrial Gas*, inability to pay was only one of various ways in which the plaintiff alleged irreparable harm. *See* 828 S.W.2d at 533 (explaining that "insolvency can *be a factor* in determining whether there is an adequate remedy at law") (emphasis added). But here, Radius seems to be arguing that inability to pay, alone, is

---

[2] To further highlight the differences between this case and *Clark*, at the hearing, CEI's counsel noted that here, unlike in *Clark*, near-term funding is in the process of being secured. Additionally, in *Clark*, the defendant was given the opportunity to post a $1,000,000 bond and to retain possession of the assets in question. 431 F.2d at 56. Radius does not request giving CEI such an option.

enough to establish irreparable harm.[3] *See* Doc. 5, Pl.'s Mot. for TRO, 9–10. And, as discussed above, Radius has not sufficiently established CEI's inability to pay. *Cf. Tex. Indus. Gas*, 828 S.W.2d at 533–34 (noting all the evidence the plaintiff put forward of inability to pay, along with other considerations such as harm to the plaintiff's credit reputation).

The second case is *Surko Enterprises, Inc. v. Borg-Warner Acceptance Corporation*, 782 S.W.2d 223 (Tex. App.—Houston [1st Dist.] 1989, no writ). But read in conjunction with other Texas case law, and as interpreted by *Texas Industrial Gas*, *Surko* stands for the proposition that insolvency may "be a factor" when determining whether there is an adequate remedy at law. *See Texas Indus. Gas*, 828 S.W.2d at 533. Again, Radius does not point to any other factors.

Thus, "[Radius] has not cited any legal authority to support [its] contention that injunctive relief . . . is appropriate" solely based on CEI's perceived financial difficultyI. *King*, 2008 WL 11347424, at *2.

Fourth, assuming that the trucks are depreciable assets, Radius does not argue that depreciation would be difficult to quantify. *See* Doc. 5, Pl.'s Mot. for TRO, 9. Again, Radius's argument here is conclusory and relies on its own employee's declaration. *See* Doc. 6, Pl.'s App., 1-B--1-C. CEI further points out that: it has not misused the vehicles, Doc. 13, Def.'s Resp., 2; the vehicles have a fifteen-year minimum life cycle, so any depreciation in the future would be small; and a short delay in CEI's financing would not result in increased depreciation of the vehicles. *Id.* at 6,

---

[3] Although Radius, as discussed below, also mentions the depreciation of the leased trailers, Radius seemingly suggests that it is the inability of CEI to pay for such depreciation that would constitute irreparable harm. *See* Doc. 5, Pl.'s Mot. for TRO, 9–10 (arguing, immediately after mentioning depreciation, that "Radius will very likely be left without an adequate or meaningful remedy because CEI will likely be unable to pay" the amount due under the Master Lease). In other words, Radius does not argue that depreciation of the trailers is a separate basis for finding irreparable harm. Even if Radius were attempting to do so, as discussed below, Radius does not cite any law that supports such a finding.

11. CEI also argues that any depreciation is accounted for in the lease payments and therefore depreciation "is not a harm, much less a 'new harm,' Radius would face in the absence of an injunction." *Id.* Radius does not point the Court to any case law, or circumstances unique to this case, that shows how normal depreciation constitutes irreparable harm.

In light of Radius's higher burden on a mandatory injunction, the Court concludes that Radius has not shown that it will suffer irreparable harm. On the contrary, CEI has shown that it is confident that it will be able to pay Radius soon, given that it has secured a new lender and is in the process of obtaining a new credit facility in the near future. These facts weigh against finding irreparable harm to Radius if the TRO were denied.

C.  *Whether the Threatened Injury to Radius Outweighs Any Threatened Harm to CEI*

Radius believes that because CEI has no right to continued use of the trailers, CEI does not have any threat of injury. Doc. 5, Pl.'s Mot. for TRO, 10. On the other hand, Radius sees harm to itself, as the trailers—which are Radius's assets—are depreciable assets. *Id.*

The Court believes that this factor is, at best, neutral for Radius. Radius overlooks the fact that although it has a high likelihood of success on the merits of its claim, the Court has not yet reached a final decision on the merits. Therefore, if the Court were to grant Radius its requested relief at the TRO stage, and then were to decide against Radius at a later stage, an injunction would deprive CEI of its contractual right to conduct significant business using the leased trailers. This would cause great harm to CEI, especially if, as Radius has suggested, CEI is enduring financial difficulty. CEI explains that it employs "hundreds" of individuals, and that Radius's repossession of the vehicles after a TRO "would cripple CEI . . . ." Doc. 13, Def.'s Resp., 12. Radius, on the other hand, has not pointed to any threat to its business if its Motion for a TRO were denied.

Because there is potential harm for both parties, the Court concludes that this factor weighs neutrally, if not towards CEI due to its alleged financial hardship.

D.      *Whether a TRO Will Serve the Public Interest*

Radius argues that "[t]he public has an interest in the orderly and peaceful transfer and disposition of personal property under these circumstances." Doc. 5, Pl.'s Mot. for TRO, 10. Specifically, Radius believes that because Radius's trailers might be in various locations, an injunction would serve that interest. *Id.* (citing *Clark Equip.*, 431 F.2d at 57).

However, as discussed above, Radius's harm resulting from the depreciation of its assets can presumptively be calculated using a pecuniary standard. *See Canteen Corp.*, 773 S.W.2d at 401. Moreover, Radius is seeking an affirmative TRO—it is asking the Court to order CEI to move the trailers to a certain location; put together copies of the Leased Trailers Documentation; and allow Radius to liquidate the trailers. Doc. 5, Pl.'s Mot. for TRO, 2. These are actions that cannot be undone, most notably the liquidation of the trailers. Thus, many of Radius's requested forms of relief seek to upend the status quo. And as noted in the legal standard, affirmative preliminary relief, "which goes well beyond simply maintaining the status quo [during litigation], is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Three Expo Events*, 182 F. Supp. 3d at 622. The only requested relief that arguably seeks to maintain the status quo—*i.e.*, enjoining CEI's use of the trailers—can presumptively be cured by monetary damages at trial.

Thus, the Court does not believe that a TRO would serve the public interest.[4]

---

[4] CEI also argues that Radius has "unclean hands" and therefore the TRO should be denied. Doc. 13, Def.'s Resp., 13. CEI believes that Radius used an incorrect payoff calculation contrary to industry custom when calculating the amount owed under the Master Lease, and that it wrongfully rejected CEI's offer to

## IV.

## CONCLUSION

Although Radius has shown that it is likely to succeed on the merits of its breach-of-contract claim, Radius has not shown that it would suffer irreparable harm. Additionally, the balancing of the harms and public interest factors are, at best, neutral. For the foregoing reasons, the Court **DENIES** Radius's Motion for TRO (Doc. 5).

**SO ORDERED.**

**SIGNED: March 18, 2020.**

*[signature]*
**JANE J. BOYLE
UNITED STATES DISTRICT JUDGE**

---

refinance the amount owed. *Id.* (citation omitted). However, the Court declines to address this argument given that it denies the TRO on other grounds.