UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RADIUS BANK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-0591-B |
| | § | |
| STAFFORD TRANSPORT OF | § | |
| LOUSIANA, INC. d/b/a CUSTOM | § | |
| ECOLOGY, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

This is a breach-of-contract case. Plaintiff Radius Bank filed a Motion for Preliminary Injunction (Doc. 27), seeking to enjoin Defendant Custom Ecology, Inc. (CEI) from, amongst other things, using certain Leased Trailers. On June 5, 2020, the Court held a hearing on Radius's Motion. At the hearing, the Court **GRANTED IN PART** and **DENIED IN PART** Radius's Motion. Specifically, the Court ruled that CEI shall immediately: (1) desist and refrain from using or operating any of the Leased Trailers in its business or otherwise; (2) transport, move, return, store, and/or maintain the Leased Trailers to/at a location or locations designated by Radius and/or ordered by the Court; and (3) assemble and maintain the Leased Trailers Documentation and immediately provide copies of same to Radius. This Order further explains the Court's reasoning.

## I.

## BACKGROUND

A.    *The Court's Denial of Radius's Motion for TRO*

On March 18, 2020, the Court denied Radius's Motion for TRO. Notably, the Court found

that Radius failed to establish that it would suffer irreparable harm if its Motion for TRO were denied. *See* Doc. 19, Mem. Op. & Order, 7. The Court had four reasons for reaching this conclusion:

> First, . . . Radius's calculation of the money that is owed under the Master Lease (which CEI disputes) demonstrates that Radius can precisely determine the value of its harm . . . . Second, Radius's belief that CEI would be unable to pay damages after a trial on the merits—even if relevant—is mere conjecture . . . . Third, Radius has not pointed to any specific case law that shows that inability to pay, in and of itself, constitutes irreparable harm . . . . Fourth, and assuming that the trucks are depreciable assets, Radius does not argue that depreciation would be difficult to quantify.

*Id.* at 7–11.

Additionally, the Court noted that CEI was confident that it would receive sufficient financing that would facilitate repayment to Radius because it was recently acquired by Orox Capital, an investment firm. *Id.* at 8.

B.    *Facts Alleged by Radius*[1]

     1.    The lease documents and Leased Trailers

In June of 2014, General Electric Capital Corporation (GECC), as lessor, and CEI, as lessee, entered into a Master Vehicle Lease Agreement (Master Lease). Doc. 5, Pl.'s Mot. for TRO, 3. Under the Master Lease, GECC agreed to lease certain trailers to CEI. *Id.*

Section 1 of the Master Lease explains that the vehicles were still the property of GECC, while CEI, as the lessee, had "full and complete[] control of" the vehicles. *Id.* Section 1 further specifies that the only interest CEI had in the vehicles was that of a lessee; CEI did not have any "right, title, or interest" in the vehicles. *Id.*

---

[1] For the most part, Radius's alleged facts have remained the same as those alleged in its Motion for TRO (Doc. 5). Therefore, the Court will repeat those facts as alleged in the Motion for TRO, and will acknowledge additional facts as such.

In total, GECC and its successor, BMO Harris Bank, N.A., leased 110 vehicles to CEI. *Id.* at 4. Radius then became the successor in interest to both GECC and BMO. *Id.*

    **2.**     *CEI's Default and Cancellation of CEI's Rights Under the Master Lease*

Section 7 of the Master Lease states, in part:

> Lessee shall return each Vehicle to Lessor, at Lessee's expense, at the expiration, cancellation, or termination of this Lease in relation to such Vehicle at the location designated by lessor in the same working order, condition and repair as when received by Lessee, excepting only reasonable wear and tear caused by normal usage of such Vehicle, together with all license plates, registration certificates, or other documents relating to such Vehicle.

*Id.* The license plates, registration certifications, and other documents are collectively referred to as the "Leased Trailers Documentation." *Id.*

Section 7 also explains that CEI defaults on the Master Lease when it does not surrender a vehicle when requested. *Id.* at 5. Section 17 of the Master Lease notes that CEI defaults on the Master Lease when it fails to pay any amount due to the lessor under the lease. *Id.*

Additionally, Section 18(a)(1) of the Master Lease states that the following measures can be taken if CEI were to default:

- CEI's rights to the vehicles under the Master Lease may be cancelled at the option of the lessor.

- If such cancellation occurs, CEI must pay all unpaid monthly rentals.

- All other amounts under the Master Lease also become due.

- The lessor may take possession of all the vehicles or require CEI to return the vehicles to a location of the lessor's choice.

- The lessor can enter any premises to repossess the vehicles.

*Id.* Radius provides documentation showing that CEI owes it $2,778,980.85 under the Master Lease. *See id.* at 7 (citing Doc. 7, Pl.'s App., 117).

Radius alleges that CEI has been in default under the Master Lease for months because of a failure to pay the monthly lease payments. *Id.* at 5. Radius alleges that CEI's last payments were on: (1) November 15, 2019, for $72,753.78 for certain scheduled payments, and (2) November 25, 2019, for $17,850.43 for other scheduled payments. *Id.* at 5–6. Radius alleges that CEI did not make any other past due or monthly lease payments. *Id.* at 6.

On January 28, 2020, Radius gave CEI notice of its cancellation of CEI's rights under the Master Lease. *Id.* Radius also demanded that CEI assemble the trailers so that Radius could exercise its contractual right to repossess and liquidate the trailers. *Id.* Radius then notified CEI on February 2, 2020, of the location to which CEI must deliver the trailers. *Id.*

3.      CEI's failure to surrender the Leased Trailers and Leased Trailers Documentation

According to Radius, CEI did not deliver the trailers or the Leased Trailers Documentation to Radius as required under the Master Lease. *Id.* Radius also believes that CEI is continuing to use the trailers in its business operations, and that CEI is under financial distress. *Id.*

4.      Additional facts since the Court's denial of Radius's Motion for TRO

Radius has alleged that since the Court's denial of its motion for TRO:

1.      CEI's multiple representations and assurances to this Court and Radius regarding the prospect of financing have not come to fruition;

2.      CEI has not made any payments to Radius;

3.      CEI has ignored Radius's  March 18, 2020, letter request to CEI (i) request to provide financial statements and reports for CEI; (ii) for production or inspection of the books and records relating to the trailers, including inspection reports maintenance schedules, maintenance logs, and mileage logs; (iii) to disclose the whereabouts and usage of the trailers; and (iv) to permit Radius to inspect the trailers—all of which CEI is [allegedly] required to do by the clear and unambigious terms of Section 20 of the Master [Lease];

4.      Another lessor of 88 trailers and related equipment to CEI and its affiliates

- 4 -

filed a  lawsuit on February 18, 2020 alleging that CEI and its affiliates owe in excess of $3.9 million and seeking to enjoin  CEI from using the trailers and equipment. *See Wintrust Commercial Finance v. Custom Ecology, Inc.*, No. 4:20-cv-1104 (S.D. Tex. Feb. 18, 2020) (the "Wintrust Lawsuit"); and 5. CEI continues to possess and/or use the Leased Trailers in its business.

*See* Doc. 27, Pl.'s Mot., 1.

## II.

## LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must show "(1) a substantial likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable injury absent the injunction; (3) that the threatened injury outweighs any harm the injunction might cause the defendants; and (4) that the injunction will not impair the public interest." *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442, (5th Cir. 2000). A preliminary injunction is considered an "extraordinary and drastic remedy" and is not granted routinely, "but only when the movant, by a clear showing, carries the burden of persuasion" as to each of these four elements. *Digital Generation, Inc. v. Boring*, 809 F. Supp. 2d 761, 772 (N.D. Tex. 2012).

In contrast with prohibitive preliminary relief, "mandatory preliminary relief, . . . which goes well beyond simply maintaining the status quo [during litigation], is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Three Expo Events, L.L.C. v. City of Dallas*, 182 F. Supp. 3d 614, 622 (N.D. Tex. 2016) (quotation marks omitted) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)).

## III.

## ANALYSIS

Radius brings a breach-of-contract action against CEI. Doc. 1, Compl., 7–8. In its Motion

for Preliminary Injunction, Radius seeks the following:

(1)     CEI shall immediately desist and refrain from using or operating any of the Leased Trailers in its business or otherwise;

(2)     CEI shall immediately transport, move, return, store, and/or maintain the Leased Trailers to/at a location or locations designated by Radius and/or ordered by the Court;

(3)     CEI shall immediately assemble and maintain the Leased Trailers Documentation and immediately provide copies of same to Radius;

(4)     CEI shall immediately allow Radius and/or its agents to inventory and inspect the Leased Trailers at the aforementioned location(s) and to liquidate the Leased Trailers and apply the proceeds in accordance with the Lease Documents;

(5)     As a condition to avoiding or delaying items (a), (b), and (d) during the pendency of this action, CEI shall make payments to Radius in amounts and at intervals as determined by the Court;

(6)     As a condition to avoiding or delaying items (a), (b), and (d) during the pendency of this action, CEI shall post a bond in an amount determined by the Court; and/or

(7)     Such other and further relief to which Radius is entitled and as ordered by the Court.

Doc. 27, Pl.'s Mot., 2–3.

As explained below, Radius has established a high likelihood of success on the merits of its breach-of-contract claim, while also showing that it would suffer irreparable harm if the Court does not grant it some form of relief, because of CEI's likely inability to pay a post-trial monetary judgment. Additionally, the Court finds that any injury to CEI is speculative, and that respect for clear contractual obligations favors some sort of injunctive relief for Radius.

A.     *Likelihood of Success on the Merits*

A breach-of-contract claim has four elements: "(1) the existence of a valid contract between

plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach." *In re Staley*, 320 S.W.3d 490, 499 (Tex. App.—Dallas 2010, no pet.) (citation omitted).

CEI does not dispute Radius's likelihood of success on the merits of its claim. *See* generally Doc. 36, Def.'s Resp. In its answer to the complaint, CEI admits that it has not paid Radius since November of 2019. *See* Doc. 22, Answer, ¶ 18. CEI reiterated this admission at the preliminary injunction hearing.

Though the Court denied Radius's Motion for TRO, the Court nevertheless found that Radius had a high likelihood of success on the merits of its claim. *See* Doc. 19, Mem. Op. & Order, 6. And this was before CEI admitted its failure to pay in its answer. Therefore, the Court concludes that Radius still has a high likelihood of success on the merits of its breach-of-contract claim.

B.      *Irreparable Harm*

Radius believes that if the preliminary injunction is not granted, it will suffer irreparable harm. Radius points out that CEI has continued to use the vehicles in its business. Doc. 27, Pl.'s Mot., 9.

At the TRO hearing, the Court concluded that Radius did not establish that it would suffer irreparable harm if its Motion for TRO were denied. Doc. 19, Mem. Op. & Order, 7. Amongst other reasons, the Court found that "Radius's belief that CEI would be unable to pay damages after a trial on the merits—even if relevant—is mere conjecture[,]" and that "Radius has not pointed to any specific case law that shows that inability to pay, in and of itself, constitutes irreparable harm." *Id.* at 8. In fact, the Court noted, "the general rule [is] that contract claims do not create a right to injunctive relief." *Id.* (alterations in original) (citing *King v. Hawgwild Air, LLC*, 2008 WL 11347424,

at *2 (N.D. Tex. Feb 22, 2008)).

In its Motion for Preliminary Injunction an, Radius attempts to remedy these insufficiencies from its Motion for TRO. Radius points to the additional facts that: (1) CEI has yet to pay Radius the money it is owed, despite past assurances; (2) CEI has yet to turn over financial documents that Radius requested on March 18, 2020; and (3) CEI has been sued in another lawsuit—the Wintrust Lawsuit—in which there are similar allegations levied against CEI from another substantial lender. Doc. 27, Pl.'s Mot., 1, 3–7.

Perhaps more important than any additional facts, Radius cites to two cases where Texas courts held that a party's possible inability to pay a post-trial judgment was found sufficient to constitute irreparable harm: *Texas Black Iron, Inc. v. Arawak Energy International, Ltd.*, 527 S.W.3d 579 (Tex. App.—Houston [14th Dist.] 2017, no pet.) and *RWI Construction, Inc. v. Comerica Bank*, 583 S.W.3d 269 (Tex. App.—Dallas 2019, no pet.).  Doc. 27, Pl.'s Mot., 12. In each of those cases, the appeals court upheld the trial court's grant of injunctive relief based on a finding that there was an inadequate remedy at law—*i.e.*, that irreparable harm existed[2]—because it was doubtful that the party opposing the injunction would be able to satisfy a post-trial monetary judgment. *See Tex. Black Iron*, 527 S.W.3d at 588; *RWI Constr.*, 583 S.W.3d at 278.

In *Texas Black Iron*, the plaintiff admitted that its industry was "in a serious downturn," that it was making ten cents on the dollar, that business was "as bad as" the plaintiff could remember, and that the plaintiff "did not have the money or funds to pay" the defendant. 527 S.W.3d at 587. Moreover, there were two monetary judgments already issued against the plaintiff. *Id.* at 588. The

---

[2] "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (citations omitted).

appeals court concluded that the trial court did not abuse its discretion when it found, in granting the injunctive relief, that this was sufficient evidence of the plaintiff's inability to pay and thus the defendant's irreparable harm. *Id.*

In *RWI Construction*, the defendant had "extremely limited" cash resources, assets of questionable value, and a history of converting collateral to cover the costs of the loan at issue. 583 S.W.3d at 278. Additionally, the defendant failed to pay any of the guaranty on the loan, and did not have the ability to raise additional funds to pay off the debt. *Id.* And, "[m]oreover, [the defendant] ha[d] demonstrated its unwillingness to pay [the plaintiff]." *Id.* The appeals court likewise concluded that the trial court did not abuse its discretion in granting the motion for preliminary injunction. *Id.*

Radius's evidence comes close to that found in *Texas Black Iron* and *RWI Construction*. CEI argues that its continued inability to pay Radius is not "new evidence" as it "was similarly true at the time of Radius's first motion." Doc. 36, Def.'s Resp., 11. CEI misses the mark, however: CEI's continued failure to pay—despite its multiple assurances to the Court that it would "moot" this motion in April—is evidence of its precarious financial situation. In fact, CEI admits in its answer that it has not paid Radius since November 2019—nearly seven months ago. *See* Doc. 22, Answer, ¶ 18. Like the defendant in *RWI Construction*, "[CEI] has failed to pay any portion of" its debt to Radius, which is evidence of its "extremely limited" cash resources. *RWI Constr.*, 583 S.W.3d at 278. The Court also believes that CEI's history of broken promises is circumstantial evidence of "its unwillingness to pay [Radius]," which is "just as significant, and perhaps more so, than an inability to pay." *Id.* CEI's continued lack of payment to Radius, then, weighs in favor of finding irreparable harm. *See id.*

Moreover, CEI's continued assertions that Orox Capital—an investment firm—will be able to provide CEI with the funds sufficient to cover its costs to Radius, see Doc. 36-1, Martinson Decl., ¶¶ 4–7, are not credible. At the hearing, CEI's counsel was unable to assure the Court that this funding would come through. And, the way in which this funding would come through is also incredulous—Orox would receive a loan for another company it owns, Armstrong, which in turn would then pay off CEI's debts. These highly speculative future transactions do not comfort the Court that CEI will be able to pay Radius in the future. Thus, although CEI has not come out and admitted that it would be unable to pay a monetary judgment, *cf. Texas Black Iron*, 527 S.W.3d at 587, its actions—or better yet, inactions—speak louder than its words.

Lastly, although the Wintrust Lawsuit is based on "unsubstantiated allegations . . . at the pleading stage," see Doc. 36, Def.'s Resp., 10–11, that there is another lawsuit against CEI, with remarkably similar facts, is certainly cause for concern. As Radius notes, CEI admits that it operates nearly 1,450 trailers on a daily basis, and that in the Wintrust Lawsuit, the plaintiff alleges that it has lent CEI 88 trailers, and is owed $3.9 million on those trailers. Doc. 27, Pl.'s Mot., 9. Thus, between the Wintrust Lawsuit and Radius's, CEI is potentially liable for over $6 million, on just "198 of the additional 1,450 trailers that CEI claims to be operating on a daily basis." *Id.* at 10. Although the Wintrust Lawsuit is in an early stage, and there is no other monetary judgment against CEI at this time, *cf. Texas Black Iron*, 527 S.W.3d at 588, the potential for various monetary judgments against CEI is further evidence that CEI will most likely not be able to pay Radius a post-trial monetary judgment. Therefore, Radius has shown that it would suffer irreparable harm if the Court were to deny it injunctive relief.

CEI attempts to distinguish *Texas Black Iron* and *RWI Construction* by arguing that the relief

in those cases was prohibitory, and not affirmative, in nature. In *Texas Black Iron*, the plaintiff was enjoined from "altering, pledging, or reselling any of the equipment" at issue, and from "frustrat[ing] any attempts" by the defendant to sell the equipment. 527 S.W.3d at 583. In *RWI Construction*, the defendant was enjoined from dissipating "Excess Proceeds other than depositing them into the registry of the court to be held in an interest bearing account pending a trial on the merits or further order of the trial court." 583 S.W.3d at 274.

The Court rejects CEI's arguments, for two reasons. First, whether the relief given here is prohibitory or affirmative in nature, Radius has demonstrated CEI's likely inability to pay a post-trial monetary judgment. Second, even if relevant, the injunctive relief that this Court is granting is similar to that in *Texas Black Iron* and *RWI Construction*. The Court is, among other things, enjoining CEI from using the trailers and directing it to place them in a designated location until a trial on the merits—similar to the freezing of the use of assets in both *Texas Black Iron* and *RWI Construction*. *See Tex. Black Iron*, 527 S.W.3d at 583; *RWI Constr.*, 583 S.W.3d at 274.[3] This freezing of the current situation enjoins the depreciation and wear-and-tear that would occur if CEI were to continue use of the trailers—depreciation and wear-and-tear for which CEI would most likely be unable to pay. Thus, the Court does not find the injunctive relief given in *Texas Black Iron* and *RWI Construction* distinguishable in any relevant way, if at all.

In sum, the Court concludes that CEI would be unlikely to pay any post-trial monetary judgment. For this reason, Radius has shown that it has an inadequate remedy at law and therefore will suffer irreparable harm if the Court does not grant it injunctive relief.

---

[3] The Court is also directing CEI to transport, move, store, and/or maintain the Leased Trailers to/at a location or locations designated by Radius and/or ordered by the Court; and to assemble and maintain the Leased Trailers Documentation and immediately provide copies to Radius

C.      *Whether the Threatened Injury to Radius Outweighs any Threatened Harm to CEI*

Radius believes that because CEI has no right to continued use of the trailers, CEI does not have any threat of injury. Doc. 27, Pl.'s Mot., 15. Radius argues that "the only potential 'harm' to CEI is that it will have to comply with a contractual obligation it bargained for in an arms-length transaction." *Id.* On the other hand, Radius sees harm to itself—the loss of money that it is owed, and its property that should be returned to it under the Master Lease. *Id.*

In its Memorandum Opinion & Order on Radius's Motion for TRO, the Court concluded that "this factor [was], at best, neutral for Radius," noting that "an injunction would deprive CEI of its contractual right to conduct significant business using the leased trailers." Doc. 19, Mem. Op. & Order, 12. The Court explained that CEI asserted that "Radius's repossession of the vehicles after a TRO 'would cripple CEI[.]'" *Id.* (citation omitted). The Court then found that Radius "ha[d] not pointed to any threat to its business if its Motion for a TRO were denied." *Id.*

At the preliminary injunction stage, however, Radius has brought forth evidence that shows that the threatened injury to Radius outweighs any threatened harm to CEI. Radius notes that its trailers that are "in CEI's possession account for just 7.6% of the 1,450 trailers that CEI claims to be operating on a daily basis." Doc. 38, Pl.'s Reply, 8. Thus, it is likely that one of the following is true: (1) enjoining CEI's use of the trailers does not present a realistic harm to CEI's business, or (2) CEI is in such a bad financial situation that if enjoining use of just 7.6% of its trailers would lead to its collapse,[4] that would happen regardless of this Court's Order. *See id.* Moreover, CEI's claim that enjoining use of the trailers would lead to its collapse is pure speculation—both in its briefing and at the hearing, CEI failed to bring forth any such evidence of this possibility. *See* Doc. 36, Def.'s

---

[4] This would be further evidence of CEI's inability to pay a post-trial monetary judgment.

Resp., 13. The Court, now at the preliminary injunction stage, does not credit CEI's assertions of its perceived harm.[5]

On the other hand, CEI's inability to pay would lead to harm to Radius. CEI claims that "Radius is by all accounts over-secured, will experience little more than ordinary and minuscule deprec[i]ation in the near term, and will be paid off what is owed in full in the near future." Doc. 36, Def.'s Resp., 13. CEI asserted at the hearing that Radius is a secured creditor, and would be paid before unsecured creditors. However, these arguments are premised on the idea that CEI would be able to pay Radius in the future—which, as the Court has already explained, is likely not the case. Thus, if injunctive relief were denied, Radius would likely lose money and/or property that it is owed.

Therefore, the Court concludes that the threatened injury to Radius outweighs any threatened harm to CEI. This is especially true when considering Radius's requested relief. Some of Radius's requested relief is inappropriate: Radius asks the Court to order CEI to allow Radius to liquidate the trailers; for CEI to pay Radius for its breach of the Master Lease in intervals set by the Court; and for CEI to post a bond in an amount determined by the Court. Doc. 27, Pl.'s Mot., 2–3.[6]

Given that the Court has yet to reach the merits, without Radius pointing to case law to the contrary, the Court will not order CEI to pay Radius at intervals set by the Court. Additionally, to liquidate the trailers and to order payment to Radius are actions that cannot be undone. Injunctive relief seeks to "freeze[] the status quo, and . . . 'to preserve the relative positions of the parties until

---

[5] The high likelihood of success on the merits of Radius's claim suggests that CEI, in fact, no longer has a "contractual right to conduct significant business using the leased trailers," as the Court previously found. Doc. 19, Mem. Op. & Order, 12.

[6] At the hearing, there was a dispute on the amount owed: Radius believes it is $2.7 million, while CEI believes it is $1.8 million. Radius thus asks for a bond of $1.8 million.

a trial on the merits can be held.'" *Humana Ins. Co. v. Tenet Health Sys.*, 2016 WL 6893629, at \*12 (N.D. Tex. Nov. 21, 2016) (quoting *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997)). Affirmative injunctive relief, on the other hand, "is particularly disfavored . . . ." *Three Expo Events*, 182 F. Supp. 3d at 622 (quotation marks omitted) (quoting *Martinez*, 544 F.2d at 1243).[7]

However, Radius also requests the Court to: (1) enjoin CEI "from using or operating any of the Leased Trailers"; (2) order CEI to "transport, move, return, store, and/or maintain the Leased Trailers" at a designated location or locations; and (3) order CEI to "assemble and maintain the Leased Trailers Documentation and immediately provide copies of same to Radius[.]"

The Court finds these requests appropriate. Requests (1) and (2) help to preserve the status quo—specifically, to freeze the current state of the trailers for which CEI has stopped payment. Request (3) would cost little to CEI, and therefore does not present any threat of harm to CEI.

D.      *Whether a Preliminary Injunction Will Serve the Public Interest*

In its Order on Radius's Motion for TRO, the Court originally found that a TRO would not serve the public interest because most of Radius's requested relief was affirmative in nature, which is "particularly disfavored[.]" Doc. 19, Mem. Op. & Order, 13 (citation omitted).

However, upon further review, the Court believes that granting Radius's Motion for Preliminary Injunction serves the public interest. That "CEI submits that it is making every effort to moot this case as expediously as possible," is unavailing. *See* Doc. 36, Def.'s Resp., 14 (citation omitted). As noted above, CEI has continously made such assertions, but to no avail. Instead, it is in the public interest to encourage parties to abide by their contractual obligations. *See Amerispec,*

---

[7] Additionally, the Court will not require CEI to post a bond, as the posting of a bond would not have the effect of preserving the status quo.

*Inc. v. Metro Inspection Servs., Inc.*, 2001 WL 770999, at * 6 (N.D. Tex. July 3, 2001). For the Court to allow CEI to continuously fail to abide by explicit contractual obligations—such as to stop use of the trailers in the event of no payment—would be to excuse breaches of bargained-for agreements under the guise that such breaches might be able to be cured at an unspecified future date through unspecified means. That is not in the public interest; what is in the public interest, on the other hand, is to encourage parties to abide by the promises they have made.

Therefore, injunctive relief would serve the public interest.[8]

## IV.

## CONCLUSION

For the foregoing reasons, Radius's Motion for Preliminary Injunction (Doc. 27) is **GRANTED IN PART** and **DENIED IN PART**. It is hereby **ORDERED** that: (1) CEI shall immediately desist and refrain from using or operating any of the Leased Trailers in its business or otherwise; (2) CEI shall immediately transport, move, return, store, and/or maintain the Leased Trailers to/at a location or locations designated by Radius and/or ordered by the Court; and (3) CEI shall immediately assemble and maintain the Leased Trailers Documentation and immediately provide copies of same to Radius. It is further **ORDERED** that Radius and CEI shall submit to the Court within **ONE WEEK** of this Order the following: (1) the designated location(s) for storage of the trailers; (2) the date on which the trailers shall be moved to the location(s); and (3) the date on

---

[8] CEI argues that Radius has "unclean hands" because of "its adherence to a payoff calculation that is contrary to industry custom." Doc. 36, Pl.'s Resp., 14 n.6. Thus, CEI argues that "Radius's application should be denied." *Id.* (citing *Reg'l Props., Inc. v. Fin. & Real Estate Consulting Co.*, 752 F.2d 178, 183 (5th Cir. 1985)). But in *Regional Properties*, there was a "misrepresentation of material facts . . . ." 752 F.2d at 183. Here, CEI's argument is not developed whatsoever; instead, this seems to be a dispute about the amount owed—one of the reasons why the Court is not ordering injunctive relief in the form of money payments at this time. Thus, the Court rejects CEI's unclean hands argument.

which the Leased Trailers Documentation will be sent to Radius. It is further **ORDERED** that the trailers must stay at this location, and are not to be liquidated until a trial is had or after further order by this Court.

SO ORDERED.

SIGNED: June 12, 2020.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE